IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**TRACY B.,**

 **Plaintiff,**

v.              Case No.: 2:23-cv-00742

**MARTIN J. O'MALLEY,
Commissioner of the
Social Security Administration,**

 **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

  This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs requesting judgment in their respective favor. (ECF Nos. 4, 7).

  The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF

No. 4); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF No. 7); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

## I.    Procedural History

In September 2020, Tracy B. ("Claimant") filed an application for DIB, alleging a disability onset date of August 15, 2016, due to rheumatoid arthritis, restless leg syndrome (RLS), anxiety, depression, and fibromyalgia (Tr. 207, 233). After her application was denied initially and on reconsideration, Plaintiff requested an administrative hearing, which was ultimately held on February 21, 2023. (Tr. 17). On March 17, 2023, the ALJ issued a decision finding Claimant not disabled. (Tr. at 27). The Appeals Council denied Claimant's request for review on September 25, 2023. (Tr. at 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 3). Claimant filed a Brief in Support of Judgment on the Pleadings, (ECF No. 4), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 7), to which Claimant filed a reply, (ECF No. 8). Consequently, the matter is fully briefed and ready for resolution.

## II.   Claimant's Background

Claimant was 46 years old on her alleged disability onset date and 52 years old on the date of the ALJ's decision. (Tr. at 55). She completed the ninth grade; communicates in English; and previously worked as a bank teller, mortgage clerk, and mortgage loan officer. (Tr. at 48, 232, 234).

### III.     Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a

*prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the

4

claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for DIB through December 31, 2021. (Tr. at 19, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from her alleged onset date through her date last insured. (Tr. at 20, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: osteoarthritis, degenerative disc disease of the lumbar and cervical spine with radiculopathy, and obesity. (Tr. at 20, Finding No. 3). The ALJ also considered Claimant's obstructive sleep apnea, gastroesophageal reflux disease, restless leg syndrome, coronary artery disease, hyperlipidemia, asthma, sinus tachycardia, agoraphobia, major depressive disorder,

generalized anxiety disorder, somatic symptom disorder, panic disorder, and obsessive compulsive disorder, but the ALJ found that the impairments were non-severe. (Tr. at 20-21). The ALJ concluded that Claimant's fibromyalgia and rheumatoid arthritis were not medically determinable impairments. (Tr. at 22).

Under the third inquiry, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 22-23, Finding No. 4). Accordingly, the ALJ found that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel and crouch; but she can never crawl. She is capable of frequent fingering, handling and feeling with the bilateral upper extremities. She is capable of tolerating occasional exposure to extreme cold; heat; wetness; vibration; atmospheric conditions, as that term is defined in the SCO; as well as any workplace hazards such as moving machinery or unprotected heights.

(Tr. at 23-26, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could perform her past relevant work as a mortgage clerk and mortgage loan officer. (Tr. at 26, Finding No. 6). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (*Id.*, Finding No. 7).

### IV. Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ did not properly evaluate her mental impairments or fibromyalgia. (ECF Nos. 4, 8). In response, the Commissioner contends that the ALJ's RFC analysis is supported by substantial evidence. (ECF No. 7).

### V. Relevant Medical History

The undersigned reviewed all of the evidence before the Court. The evidence that

is most relevant to the instant matter is summarized as follows.

### A. Treatment Records

Claimant's family physician diagnosed her with panic disorder, anxiety, depression, insomnia, and restless leg syndrome. (Tr. at 77). She was prescribed medications to treat the symptoms of those conditions. (Tr. at 661). Claimant with further diagnosed with polyarthritis and possible fibromyalgia, which required further workup. (Tr. at 343, 345). She was prescribed meloxicam. (Tr. at 347).

### B. Opinions, Evaluations, and Prior Administrative Findings

Claimant underwent consultative mental and physical examinations in March and December 2021. (Tr. at 325-37, 453-63, 659-64). Based on the results of those examinations and review of Claimant's other records, a state agency physician determined at the initial level of administrative review that Claimant could perform a range of light exertional work with postural and environmental limitations. (Tr. at 63-66). Upon reconsideration, a state agency physician concluded that Claimant could only lift and/or carry 20 pounds occasionally and 10 pounds frequently with additional postural and environmental limitations. (Tr. at 78-79). State agency psychiatrists assessed that Claimant was limited to simple, routine, and repetitive tasks; two-hour increments of concentration; and occasional and superficial contact with the general public. (Tr. at 67-69, 77).

### C. Claimant's Statements

Claimant testified during her administrative hearing on February 21, 2023, that she was terminated from her last job in August 2016 because she was not completing her work (Tr. 39-40). She complained of depression, anxiety, pain in her neck and left arm and fingers, difficulty walking for a period of time, and pain in her low back. (Tr.

7

40-41). She allegedly suffered from restless leg syndrome, which impacted her ability to sleep, and she used a CPAP machine at night. (Tr. 42).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. Discussion

Claimant's challenges to the Commissioner's decision concern the ALJ's analysis of her mental RFC and fibromyalgia.

### A. *Mental RFC*

Claimant first argues that the ALJ failed to articulate how the mild limitations associated with her non-severe mental impairments affected her ability to do work-related activities. Further, she claims that the ALJ ignored or improperly discredited the medical opinions concerning her mental functional abilities.

SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* The ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant

9

"is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

For example, in *Mascio,* the ALJ found that the claimant had moderate limitations in concentration, persistence, and pace, but failed to adequately account for those deficits in the RFC analysis and hypothetical questions posed to the vocational expert. *Id.* at 637-38. The Fourth Circuit held that, in the absence of a logical discussion by the ALJ of how claimant's mental deficits translated into work-related functional limitations—or how not—the reviewing court was precluded from conducting a meaningful review of the RFC finding and thus prevented from determining whether the disability decision was supported by substantial evidence. *Id.* at 638. Although *Mascio*

10

specifically involved moderate limitations associated with a severe mental impairment, the ALJ's duty to consider the effects on a claimant's RFC of mild limitations associated with a non-severe impairment is explicitly required by SSR 96-8p:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5.

Since *Mascio,* courts in this circuit have not agreed on whether an ALJ's failure to discuss in the RFC analysis the work-related effects of mild limitations in paragraph B criteria automatically mandates remand. *See, e.g., Williams v. Comm'r of Soc. Sec.*, No. 5:22-CV-00128-DSC, 2023 WL 1931351, at *3 (W.D.N.C. Feb. 10, 2023) ("Here, the ALJ failed to address whether Plaintiff's mild mental limitations resulted in any functional limitations. While the ALJ may have found that Plaintiff's mild mental health impairments do not result in any functional limitations, his failure to explain that finding requires remand."); *Monica E. v. Kijakazi*, No. CV BPG-21-1825, 2022 WL 965691, at *2 (D. Md. Mar. 30, 2022) (holding that ALJ erred by failing to consider whether claimant's non-severe mental impairments, with mild limitations in all four functional areas, affected her ability to perform basic work activities; thus, remand was warranted.); *Anderson v. Kijakazi*, No. 2:20-CV-3237-MBS, 2022 WL 391549, at *5 (D.S.C. Feb. 9, 2022) ("On the facts presented here, the court finds that the ALJ erred when he omitted from his RFC assessment a limitation that reflects his finding of

Plaintiff's mild mental impairments *and* failed to state why any such limitation is not necessary."); *Long v. Kijakazi,* No. 1:20-CV-201, 2021 WL 6618725, at *11 (N.D.W. Va. Dec. 28, 2021) (holding that ALJ's failure to evaluate the effect of Plaintiff's mild mental limitations on her ability to perform the relevant functions of her past skilled work frustrated meaningful review and required remand); *McMichael v. Colvin,* No. 1:15CV528, 2016 WL 4556768, at *3-4 (M.D.N.C. Aug. 31, 2016); *But see Kimberly B. C. v. Kijakazi*, No. 1:22CV617, 2023 WL 4974033, at *5 (M.D.N.C. Aug. 3, 2023) (collecting cases that find no general requirement under *Mascio* to remand for lack of discussion regarding mild mental limitations in RFC); *Britt v. Saul,* 860 Fed. Appx. 256, 262 (4th Cir. 2021) (broadly suggesting that absence of discussion at step 4 of limitations associated with a non-severe impairment may not require remand when "[t]he discussion in step-two that these limitations had a minimal impact on vocation and were being managed tells us what impact these limitations had in the residual-functional-capacity analysis."). While these decisions approach the issue from slightly different perspectives, one common thread throughout all of them is that remand is required when the ALJ's decision, taken as a whole, is insufficient to allow for meaningful review, or fails to build "an accurate and logical bridge from the evidence to [the] conclusion," or both. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted).

Here, the ALJ evaluated the severity of Claimant's agoraphobia, major depressive disorder, generalized anxiety disorder, somatic symptom disorder, panic disorder, and obsessive compulsive disorder at step two of the sequential evaluation. (Tr. at 20). The ALJ found that Claimant had mild limitations in all four functional areas. The ALJ concluded that these limitations had only a "minimal" effect on Claimant's ability to do basic work activities, rendering the mental impairments non-severe. (Tr. at 21).

12

Nevertheless, the ALJ acknowledged that the step two analysis was a severity rating only, and not an RFC assessment, which required a more detailed evaluation. (*Id*. at 21-22). Yet, despite recognizing the difference between the two steps, the ALJ did not provide any meaningful analysis of Claimant's mental impairments, symptoms, or limitations at any subsequent steps of the sequential evaluation. The RFC discussion focused almost exclusively on Claimant's physical impairments.

The ALJ thus found that Claimant could perform the demands of her past semi-skilled jobs without any articulated intermediate analysis to explain how she could meet the demands of the jobs despite her severe ***and*** non-severe impairments. Of course, it was in the purview of the ALJ to determine whether the combination of severe and non-severe impairments required additional limitations to Claimant's RFC, and the accompanying hypothetical questions to the vocational expert. However, given the nature of Claimant's past semi-skilled employment as a mortgage clerk and mortgage loan officer, the record is not so one-sided that the Court can affirm the Commissioner's decision without improperly filling in the blanks for the ALJ. The boilerplate statements that the ALJ considered the functional limitations resulting from Claimant's non-severe impairments in determining Claimant's RFC and that the RFC assessment reflects the degree of limitation that the ALJ found in the paragraph B mental function analysis do not provide any substantive information or the level of articulation necessary for meaningful review. (Tr. at 20, 22).

In this case, the ALJ did not reconcile evidence that was relevant to the issues presented and which possibly conflicted with her determination concerning Claimant's mental impairments. For instance, the medical experts in this case uniformly determined that Claimant had some moderate mental functional limitations and severe

13

mental impairments. The ALJ found those findings non-persuasive because they "seem[ed] to be based heavily on the claimant's self-reports of symptoms rather than clinical evidence." (Tr. at 26). The ALJ referenced her step two discussion that Claimant's mental status findings were consistently unremarkable. (*Id.*). While it may be true that many mental status examination findings were normal, the ALJ did not acknowledge conflicting evidence that was critical to her conclusion and was indeed based on actual examination and review of clinical records.

Specifically, Claimant underwent a consultative examination on March 9, 2021. The examining psychologist, Ms. Smith, documented Claimant's abnormal mood, affect, thought content, psychomotor behavior, and recent memory. (Tr. at 328). Testing administered during that examination reflected that Claimant's recent memory was moderately impaired. (*Id.*). A second consultative psychologist, Mr. Sargent, documented abnormal findings upon examination of Claimant on December 14, 2021, including moderately impaired concentration during testing. (Tr. at 661-62). The state agency psychologists, Drs. Smith and Boggess, reviewed Claimant's records, including the consultative examination reports, and concluded that Claimant had moderate limitations in understanding, remembering, or applying information; interacting with others; and maintaining concentration, persistence, or pace. (Tr. at 61, 77). The experts concluded, based on their review of Claimant's clinical records and examinations (not just Claimant's subjective allegations) that Claimant was limited to jobs that involved simple, routine, and repetitive tasks; two-hour periods of concentration; and only occasional and superficial contact with the general public. (Tr. at 67-69, 77).

Although the ALJ cited to the consultative examinations in a few instances, it was in the context of citing Claimant's reported daily activities and pain allegations. The ALJ

did not properly consider the findings or opinions concerning Claimant's mental functional abilities. The ALJ's conclusions may ultimately be supported in light of the clinical evidence, but she did not provide sufficient articulation for the Court to make that determination. The evidence and the ALJ's findings clearly warranted discussion of Claimant's mental RFC; particularly, given the type of work the ALJ found Claimant capable of performing.

As noted by Claimant, the error cannot be considered harmless because the ALJ determined that Claimant could return to her past semi-skilled work without any analysis of whether she can fulfill the mental demands of that job. For those reasons, the undersigned **FINDS** that the ALJ's RFC analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon her analysis of Claimant's mental functional abilities and RFC finding.

### *B. Fibromyalgia*

Claimant further argues that the decision is flawed because the ALJ focused solely on the lack of objective findings in evaluating her fibromyalgia. In *Arakas*, the Fourth Circuit discussed the unique nature of fibromyalgia. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), The Court explained that symptoms of the disease are "entirely subjective," with the exception of trigger-point evidence, and there "are no laboratory tests for the presence or severity of fibromyalgia." *Id.* at 91, 96. In fact, individuals suffering from fibromyalgia will typically have no abnormalities in physical examinations, such as muscle weakness, abnormal reflexes, joint inflammation, or limited range of motion. *Id.* at 91. For that reason, an ALJ cannot discredit a Claimant's

15

fibromyalgia symptoms based on lack of objective evidence because the disease "eludes such measurement." *Id*. at 96.

However, while an ALJ cannot dispute a claimant's subjective symptoms based on lack of objective evidence, objective evidence is necessary to establish a medically determinable impairment of fibromyalgia at step two of the sequential evaluation. SSR 12-2p, 2012 WL 3104869, at *3. Specifically, the claimant must show that a physician diagnosed the claimant with fibromyalgia, and the diagnosis is not inconsistent with other evidence in the case record. *Id*. at *2. In addition, the claimant must produce evidence that satisfies the 1990 ACR Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. *Id*. The 1990 ACR Criteria for the Classification of Fibromyalgia requires all three of the following:

> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.
>
> a. The 18 tender point sites are located on each side of the body at the:
> • Occiput (base of the skull);
> • Low cervical spine (back and side of the neck);
> • Trapezius muscle (shoulder);
> • Supraspinatus muscle (near the shoulder blade);
> • Second rib (top of the rib cage near the sternum or breast bone);
> • Lateral epicondyle (outer aspect of the elbow);
> • Gluteal (top of the buttock);
> • Greater trochanter (below the hip); and
> • Inner aspect of the knee.
>
> b. In testing the tender-point sites, the physician should perform digital palpation with an approximate force of 9 pounds (approximately the amount of pressure needed to blanch the thumbnail of the examiner). The

> physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site.
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from fibromyalgia. Therefore, it is common in cases involving fibromyalgia to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

*Id.* at *2-3. Alternatively, the 2010 ACR Preliminary Diagnostic Criteria requires all three of the following criteria:

> 1. A history of widespread pain;
>
> 2. Repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*Id.* at *3.

In this case, the ALJ considered at step two of the sequential evaluation that Claimant was "assessed with fibromyalgia." (Tr. at 22). However, the ALJ determined that Claimant did not satisfy the criteria set forth in SSR 12-2p. (*Id.*). The ALJ did not provide sufficient explanation to support that conclusion. She essentially restated the criteria for classification of fibromyalgia without connecting it to the evidence or substantively explaining her finding. As Claimant indicated, there is relevant evidence concerning fibromyalgia that the ALJ failed to properly consider. (ECF No. 4 at 19). In addition, the state agency physicians, who are highly qualified experts in social security disability evaluation, unanimously concluded that Claimant not only had a medically

determinable impairment of fibromyalgia, but that the impairment was severe. (*Id.*) (citing Tr. at 60, 78). On remand, the ALJ should additionally reexamine or elaborate upon her analysis of Claimant's fibromyalgia.

### VIII. Recommendations for Disposition

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No. 4); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 7); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*,

18

727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:**   October 1, 2024

_____
Joseph K. Reeder
United States Magistrate Judge